### 30642. JACOBS *v.* THE STATE.

DECIDED NOVEMBER 14, 1944.   REHEARING DENIED DECEMBER 11, 1944.

810

*Howard, Camp & Tiller,* for plaintiff in error.

*John A. Boykin,* solicitor-general, *Durwood T. Pye, E. E. Andrews,* contra.

GARDNER, J. ■ In view of what we have said in relating the facts, this court is without authority to set the verdict aside in so far as the general grounds are concerned.

■ Special grounds 1 and 2 assign error on the admission in evidence of certain testimony over the objection of the defendant. During the progress of the trial it developed that after Respess had been apprehended and arrested, and a considerable amount of the fruits of his burglaries located as being contained in or as having passed through the place of business of the defendant (Allied Jewelers), the defendant, together with Respess, took a considerable amount of the stolen property to the police station, informing the detectives and the police officers at the time that what they carried there was all that the defendant had. Thereafter, the detectives or the police officers went to the defendant's place of business on several occasions and there obtained additional amounts of the stolen property. This gave rise to the State offering testimony through a detective (a State's witness), to this effect: "We went back up there to the defendant's place of business on two or three separate occasions and recovered more jewelry; one time from the cashbox. That was after he brought down the stuff to the police station. That telephone call was from Albert Wyatt, and he said that there was more jewelry up at the office of the Allied Jewelers than had been returned to us and we could

come up and get it out of the cashbox. Relying upon that telephone conversation I went up to the Allied Jewelers and recovered some jewelry." This testimony was admitted over objection of the defendant. The defendant, at the time the testimony was offered, objected to it: (a) Because it was hearsay; (b) because, as he contended, Albert Wyatt was in charge of his place of business and he was rarely ever there; (c) because Wyatt had received the stolen goods without his knowledge; (d) because the State in offering this testimony was seeking to permit Wyatt, after being confronted with evidence of his own guilt, to offer self-serving declarations to make it appear that Wyatt was attempting to turn over all the stolen property to the police officer and that the defendant would not do this; (e) because the statement was made out of the presence of the defendant, was hearsay, and was highly prejudicial to him.

Special ground 2 involves the same principle as set forth in special ground 1, the only difference being that it involved an additional visit by the detectives to the defendant's place of business on the information of Wyatt that the police had not yet obtained all of the stolen property from the defendant's place of business. Wyatt on each occasion informed the witness the nature of the additional property and its location in the defendant's place of business. In this connection it is also urged by the defendant in effect that it was a scheme of Wyatt to exonerate himself and smear the defendant, since Wyatt had testified that the defendant was instrumental in having him not to disclose, in the first instance, all of the stolen property which was found in the defendant's place of business. As we have heretofore stated, all of these matters, as to whether Wyatt or the defendant was telling the truth of the transaction, were questions for the jury. The only principle with which we are here concerned is, did the court commit error in permitting the detective to testify that the reason he returned to the place of business of the defendant on subsequent occasions was that he was acting on the information which he received from Wyatt? To state it differently, did the court err in permitting detective J. B. White to testify, over objection, as to his reason for returning to the place of business of the defendant to search for additional stolen property, and on which occasions, in following up this information from Wyatt, he found additional undisputedly stolen property?

In our opinion this testimony was not inadmissible as being hear-. say, or for any other reason. It was admissible for two reasons:. (a) the officer, "acting on such information, . . discovered other facts connecting the accused with the crime with which he was charged." *Coleman* v. *State*, 127 *Ga.* 282 (56 S. E. 417); and (b) since the testimony went to explain why the officer returned to the defendant's place of business on several subsequent occasions, such evidence was admissible not as hearsay but as original evidence. Code, § 38-302; *Daniel* v. *State*, 66 *Ga. App.* 59 (17 S. E. 2d, 91). We find no reversible error in special assignments 1 and 2.

▪ . Special ground 3 assigns error because the court, over objection of the defendant, permitted a witness for the State to testify as follows: "On the morning that John Carter called. Albert Wyatt down to the third floor of the court house he [Wyatt]. told me in the presence of John Carter that he had been co-operating with me, and that he remembered another item, and he gave me the information about the ring watch. He said that Mr. Jacobs had sold Dan Wexler a ring watch, and that he had asked. Wyatt to make that ring watch over into a wrist watch, and that. he put three little diamonds (settings) on it, and a band, and that he had made it over for him, and that Wexler had given it to his wife for a birthday, or anniversary, or some such occasion, and, that if he would go out there we would find it at Wexler's house. He told me that he got it, or that they got it, from or through this Respess, alias Frank Knight. I heard every word that was said down there that day between Wyatt and John Carter. Wyatt did not tell John Carter down there that day that he had sold that. watch to Dan Wexler. He said that Mr. Jacobs sold it to him for. $15. He stated down there how come him to change that from. a ring watch to a wrist watch. He said Mr. Jacobs brought it back in the shop there and told him to make that change and to. put a wrist strap on it. Mr. Wyatt told John Carter and myself. down here on the third floor of the court house that Joe Jacobs sold this ring watch to Dan Wexler, and that Joe Jacobs had him to change the ring watch into a wrist watch." The objection to this testimony was to the effect (a) that it was hearsay, irrelevant, immaterial, illegal, and prejudicial; and (b) that it concerned a conversation had out of the presence of the defendant. Previous

to the offering of the testimony quoted above, a witness for the defendant, John Carter (who assisted in the investigation of the transaction under consideration), had testified for the defendant that in the conversation referred to above concerning which White was testifying, Carter had testified that Wyatt said in the conversation that he (Wyatt) and not Jacobs had sold the watch. It is our opinion that for impeaching purposes and to discredit Carter, it was permissible to allow White to testify to a different state of facts. Code, § 38-1802.

■ Special ground 4 complains because the court erred in the following charge: "I charge you that the receiving of stolen goods without knowledge that they were stolen, or without any reasonable grounds to suspect that they were stolen, is not an offense under the laws of Georgia." It is insisted that this is not a correct legal principle; that the court in effect instructed the jury that it was not necessary for the State to prove that the defendant received stolen goods knowing at the time that they were stolen, and that the effect of the charge was that the State did not have to prove that the defendant had knowledge that they were stolen, but that the jury would be authorized to convict the defendant if *he had reasonable cause to suspect that they were stolen.*" In the case of *Wren* v. *State,* 70 *Ga. App.* 510 (28 S. E. 2d, 782), this court in effect had before it the principle now involved. In this special ground we think the movant properly construed the charge in the words set forth in quotations and italicized in the quotation above. If this construction is correct (and we have no doubt that it is, and that it was so understood by the jury), then it is practically the same charge which we held substantially correct in the *Wren* case. In that case the court charged "that the defendant knew at the time he received them, if he did receive them, that they were stolen, or if he had reason to believe that they were stolen, at the time he received them." We discern no material differences between the words in the *Wren* case, "reason to believe that they were stolen," and the construction of the charge in the instant case that "he had reasonable grounds to suspect that they were stolen." This ground contains no reversible error. The court did not err in overruling the motion for a new trial for any of the reasons assigned.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*